This morning is number 5-20-0043 Enray the Marriage of Weeks. Arguing for the appellant Gregory Weeks is Ted Kiyanka. Arguing for the appellate Kimberly Weeks is Lane Harvey. Each side will have up to 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired I'll hit the gavel. Please remember only the clerk of the court is permitted to record these proceedings today. Okay, counsel ready? Yes, your honor. Yes, your honor. Mr. Kiyanka, are you the appellant? Yes, your honor. You may proceed. Good morning, your honors. May I please, excuse me, I have a frog this morning. I am Edward Kiyanka. I represent Gregory Weeks. This is an appeal from a summary judgment entered against Gregory Weeks in a section 214-01 post-dissolution claim. Your honors, the danger here is losing focus on the posture of this case. This is not an appeal from a trial. All we have is an incomplete paper record. It is an appeal from a summary judgment. There has been no live testimony in open court. There has been no live cross-examination. There are fact issues galore. Fundamental fairness requires that we go back to the trial court and have a real trial, not a paper trial. We all know the familiar summary judgment standards. Summary judgment is a drastic measure. In summary judgment, the court cannot try fact issues, weigh evidence, or make credibility determinations. Summary judgment is only allowed when the moving party's right is clear and free from doubt. On review, the only issue is, is there at least one genuine issue of material fact on any one of the essential elements of the claim to which the motion is addressed? All relevant material must be construed strictly against the movement and liberally in favor of the opponent. And if different inferences can be drawn from material facts, summary judgment is precluded. In addition, in this case, the movement is the party with a burden of proof. That means she must establish that there is no genuine issue of material fact on any of the necessary elements of her case. Your honors, this is a two section 1401 claim, which is an extraordinary remedy. Its purpose is to allow a party to undo a final judgment. In this case, one that was almost 24 months old by proving certain facts that would have precluded the judgment from being entered. It cuts against the strong policy of the judgments must be final. If it were easy to reopen a judgment, almost two years later, few judgments would be safe. Section two 1401 does not provide a litigant, a new opportunity to perform a task that should have been completed at the time of the original judgment. It does not allow a litigant relief from the consequences of her mistake or negligence. In this case, there is another strong policy. The policy favoring settlements, especially marital settlement agreements. And MSA will be set aside only if the assets in question could not be recovered at the time of, or prior to the entry of the judgment. There are three elements in a section two 1401 claim. First, the claimant must have a meritorious claim or defense. Second due diligence in presenting the claim of the original action. Third due diligence in filing the section two 1401 petition. In this case, there are multiple genuine material fact issues on each of these elements. It is important that Kimberly's sole claim for purposes of this summary judgment is that the MSA was unconscionable on its face as a matter of law. She makes no claim of procedural unconscionability. She makes no claim of duress. Under the case law cited in our brief, unconscionable means that A, she did not have a meaningful choice and B, the MSA's terms are unreasonably unfavorable to the other party. Conversely, then if she did freely and without duress, fraud, or other misconduct, choose the settlement in question, because that's what she wanted. It cannot be unconscionable, whatever the property division. Mr. Kanka, I want to ask you about the substantive unconscionability. Yes. The appellee says that you're wrong, that this is not just about substantive unconscionability, that they brought this as a three-count complaint. Do you think that if this court affirmed or set aside, regardless, that whatever they did on count two, that somehow they could revive procedural unconscionability? I mean, it seems like we have claim splitting going on here. You know, I have not researched that, and I'm afraid I can't give a good answer to that question. It's their position that for purposes of this summary judgment only, they're relying on facial unconscionability. They say that they have not waived the other two claims. Well, my concern is if they have not, if we're only proceeding on count two, how do we have a final judgment? If you have a three-count complaint and you only are proceeding on summary judgment on count two, how do we have a final judgment if there's two counts floating out there? I'm worried about jurisdiction. Yes, the only relief here would be to set aside the summary judgment and remand the case for trial. So, in effect, we'd be back to where we were before the summary judgment was entered, and I suppose whatever issues they wish to raise, they could raise. But under Section 304, or Rule 304, I mean, since we have a summary judgment, that's an appealable order. But the appeal relates only to that one issue of substantive unconscionability because that's the order. We can only review the order that was entered by Judge Thurston. So, in my view, that would be the situation. We would simply set aside the summary judgment and we'd remand it, and the case would proceed to trial, a live trial. But the trial would be on the issue of the 1401 petition. I'm not clear with regard to the trial because, as you say, the substantive unconscionability was ruled as a matter of law on its face. There was no trial on the issues of the 1401 petition. Yes. So, what would happen would be that, assuming we win, which I think we will, then it would be remanded, and the issue of unconscionability, based on whatever grounds, would be tried. But would that be tried under the marital proceeding, or would it be tried as a matter of the first prong of a 1401 petition, which is, do they have a meritorious claim? I believe that's what it would be, Ron. This is a separate proceeding. A two-section 1401 proceeding is a separate proceeding. Right. So, I want to make sure. We're not reopening the original judgment. Right. I want to make sure that we're very clear procedurally how this would happen. Even if it's affirmed, the affirmation only goes to the summary judgment. But I do remain concerned a little bit about claim studying. Of course, I guess if they win, there's nothing else to talk about. Okay. I'm sorry. Go ahead.  I guess you'd have to have evidence as to what would be a not unconscionable division of the burial property. So, that would all have to be tried. But that would be tried under the marital act. Well, no. It would be tried under 21401, because this is a separate proceeding. Well, no. I mean, if they get a summary judgment on the 1401 and it's affirmed, that's over. And then it seems like you would go back to the marital proceeding and reopen that proceeding. Is that how you view that or not? I don't think so, Your Honor. I think that I'm not sure exactly what the trial would look like. But the law I read says that the original judgment is res judicata. I mean, it's a final judgment. And so, we can't reopen that judgment under 21401. Under 21401, we'd simply be trying the issue as to what damage she sustained as a result of the original property division. Okay. Well, you and your opponent may disagree on that. So, I'm looking forward to this discussion. But go ahead. All right. Thank you, Your Honor. As I say, there are three elements to a section 21401 claim. First, of course, the petitioner has to have a meritorious claim for defense. Second, due diligence in presenting the claim in the original action. And third, due diligence in filing the section 21401 petition. On that issue, I have a question. On the issue of relaxing due diligence, does the case law require fraud or unfair conduct to relax due diligence? Your Honor, the case law requires extraordinary circumstances. And the only cases we've cited in our brief which address that issue, there was fraud. In one case, fraud on the court. In another case, concealment and some other misconduct in the trial court. But the standard, according to the case law, is extraordinary circumstances. And to quote from one of the cases, it says, such as where a party has obtained an unconscionable advantage through the extraordinary use of court processes or where some fraud or fundamental unfairness or unconscionable behavior has been shown. Well, at the record in this case, there is no claim whatsoever of extraordinary use of court processes or fraud or fundamental unfairness or unconscionable behavior. And so, as we have argued, there's no extraordinary circumstances. And therefore, if it were a discretionary ruling, it would be an abusive discretion. But our position is also that the court could not rule on that where the facts concerning due diligence are vigorously disputed. In order to make a finding that there are extraordinary circumstances sufficient to excuse the due diligence requirement, there would have to be undisputed facts. What are the disputed facts on that issue? Your Honor, there are multiple disputed facts. I only have a few minutes. I'll go through as briefly as I can. But we've gone through them point by point in detail in our brief. At the dissolution hearing in an open court, she told Judge Morris that she understood the conditions, believed it was a fair and reasonable settlement. She told Judge Morris no one had threatened or coerced her in any way. She signed the MSA with recital of the same effect. Her general appearance was to the same effect. She worked in Wheat's Chevrolet office for 25 years, eventually becoming office manager and secretary of the corporation. Greg testified she managed five or six employees, signed payroll, paid taxes, paid bills, and so forth. Her own deposition corroborates this. She was not naive, uninformed, or unsophisticated. In addition, he testified in an affidavit that she wanted the divorce as bad as I did. We had decided to get a divorce. On January 3rd, three days before the dissolution hearing, they went to see attorney Sam Banks. They had conversations with him. There's evidence in the records that she worked with her brother, Rodney, in trying to decide what would be an appropriate settlement in this case. Rodney had been an executive with Greg Wheat's Chevrolet for some 17 years, so she had counseling throughout. In the dissolution hearing, Greg testified that we've talked it over and over and over and over. There's other evidence of meetings with Kim. There's evidence from attorney Banks to the same effect. There's an affidavit from Karen Williams, a friend of both parties, who gives details showing that Kimberly was just as determined to complete the divorce. She was not misled. She was perfectly capable of negotiating,  and she was not in any way impaired at that time. That's just some of the evidence, Your Honor. We've detailed it in our brief. There's a great deal of evidence to the effect that she was not incapacitated for 24 months from the time of the original judgment, when she was no longer married to Greg. There's no evidence in the record to support her claim, other than her affidavit, that she was incapable of acting for 24 months. Your time is up, but I do have one more question. What evidence is there for conflicting values as to the date of the marital settlement agreement, January 6, 2012? Well, we have the affidavit of two of the accountants, and Harold Meyer and Chris Froggins. They present conflicts with respect to the value of the stock. There's simply no evidence of some items. The evidence of the value of real estate is unclear in the record. There's a spreadsheet at C1489, which the court apparently used, although the court did not make findings on some of the assets. So that's a problem in and of itself. But in that spreadsheet, which is unverified, there are values assigned to various assets, and there's no evidence in the record with respect to some of those values. Okay, thank you. Just following up on that, Mr. Kanka, the fact that there is no evidence as to the values, and we know from the petition that there's an extraordinary gap between what she received and the value of his estate, your client's estate, marital estate, $11 million plus, do you think that that's a contested fact under 2-1401, then, that needs to be flushed out? Or do you believe that simply on the record, based on in re the marriage of Johnson, that the petition can be granted? No, it's, again, I come back to where I started. This is summary judgment. That discussion might be pertinent if we were reviewing the judge's findings after a trial. But all we need to show here is that there are fact disputes. We don't know exactly what the value of the marital estate is. We don't know exactly what each party's share was because some of those items are disputed. Now, we don't know what the scope of the error is, but the fact is the judge should not have ruled on a particular value without having made specific findings after a trial where there was evidence presented in open court and cross-examination, and then the court would be entitled to make a determination as to what the value of the marital estate was. But here, the court can't do that because this is summary judgment. Summary judgment is premature. In this case, we agree there should be expert testimony. We need to have experts on both sides who will look at everything, business valuation experts and accountants who can look at everything and testify and be cross-examined about the values in the estate. Then we'll have real evidence as to what the value of the marital estate was, and then the court can make a determination. Okay. Thank you so much. Mr. Harvey, you'll be given additional time if you need it as well. Thank you, Your Honor. May it please the court. Let's be clear about one thing on this record. There is undisputed evidence of the value of the marital estate. Undisputed evidence of the value of the dealerships. Undisputed evidence as to every issue he was talking about. If you look at his brief, you will not find a single issue that he can detail where there is a genuine issue of material fact. For example, the value of the dealerships. He, his client, submitted three business valuation experts or expert reports as to the value of each of the dealerships. They were never contradicted. They were accepted by the court. They are exhibits 2021 and 22 to his deposition. His testimony is that he accepts those values as the value of the dealerships. If you look at those reports, those reports include the debts of the dealership, the assets of the dealership, all of the details about the dealerships and reaches an opinion as to the fair market value of each of the dealerships. There is no genuine issue of fact as to that. Next, he submitted financial statements, exhibits two and three to his deposition. He was asked specifically at page 73 of his deposition. If the numbers in those financial statements that he listed represent the fair market value of the assets, he said they did. That is never contradicted what the trial court had and what the trial court ruled upon in arriving at the value of the marital estate is the financial statements affirmed by him to be accurate. The expert reports of the value of the dealerships submitted by him and affirmed by him to be accurate. And the trial court concluded in his judgment that the minimum value using the 123110 financial statement of the marital estate was 11.3 million. And what's significant about that is the trial court in using that number used the data provided by him. There is no genuine issue of fact because all of the data upon which the trial court relied was data that he submitted. There isn't any dispute from us as to those values. Now- What about, Mr. Harvey, what about the debt? I mean, when you talk about division of a marital estate, you're talking about more than just value of the dealerships, so you have to divide everything. And the point I get to there, Judge, look at the personal financial statements for the period 123110 and then going forward to the 103112. The debt is listed on the financial statements that the debt outside the dealerships are listed there. They are listed there. He has confirmed their accuracy. The trial court had those numbers in passing on the motion for summary judgment and there was no dispute put before the trial court as to any of those numbers. And again, his testimony was that those numbers, page 73 of his deposition, those numbers reflect the fair market value of the assets. So there is no genuine issue of material fact as to the value of the marital estate. They haven't put it up. What about Justice Moore's question about the diligence and the flexibility? I mean, your client waited almost two years to file this 1401 petition, having worked in the dealership for 25 years. I mean, I would refer the court to the diligence issue to the Johnson case. The three cases that are directly on point in this, none of which he ever mentioned, none of which are mentioned in his brief, Johnson, Arzmon and Callahan. And what the Johnson court basically said is this, that the diligence requirement is not inflexible and that they will not rely upon the diligence requirement to allow a patently unconscionable agreement to stand. And that issue was litigated in the Johnson case, was determined by the Johnson court under circumstances that are pretty similar to this, because here's the point in this case, looking at the absolutely undisputed value of the marital estate, judge Thurston decided that at a maximum, at a maximum, Kim got 17 and a half percent of the marital estate. Kim got no maintenance and he got 84 point something percent of the marital estate, whatever the difference is. My submission to your honor is that the 17 and a half percent, frankly overstates what she got, because if you look at what the court relied on, which is the 1231 10 financial statement, the amount of money on deposit, 1231 10 was two and a half million. The amount of money on deposit from exhibits four and five to his deposition at the time of dissolution of marriage was closer to 3 million. And the court used the older number, which understated the amount of money by about a half a million. The other thing, the Chrysler dealership was added to his net worth by his own testimony in 2011. It wouldn't have been reflected on the 2010 dealership. And he valued it at 1.3 million. And you can look at the financial statements and notice the difference. So the trial court's finding of 11.3 million really understates the value of the marital estate by about a million and a half. But for purposes of this case, the trial court says her getting what was 17 and a half percent of its lower number is on its face unconscionable. Here's the point. At no point has it ever been disputed on any rational basis that she ever received more than the 17 and a half percent that the trial judge says she got. No data was ever presented to the trial court that there was any valuation differences than the expert reports that he relied upon and the valuation of the financial statements that he submitted. There isn't a genuine issue of material fact as to any of that. And the point that I think that your honors might want to take a look at in this case is I want you to take a look at the Johnson case in particular, and it's of some significance that counsel has never mentioned the Johnson case nor ours, nor Callahan. I'm looking at the Johnson case. I have it in front of me and it's not a motion for summary judgment. No, ma'am, it's not. And the Johnson case, the standard of review is abuse of discretion. That's correct. And we have a motion now for summary judgment, which is a different standard of review, right? The summary judgment, the question on summary judgment, your honor, is there a genuine issue of fact? The standard of review, I think, is de novo on that. It is. Okay. So I think the fact that we have two issues, I think Johnson becomes a little different because there's no motion for summary judgment. And I, and I, and I guess the place, I would partially agree and disagree with your honor. First of all, the first question and looking at the motion for summary judgment is what is the issue of fact? If there is no issue of fact, we go to the law. What is the issue of fact? There is no issue of fact that has been defined by the appellant in this case. And the second question is what is the value of marital estate on the date of dissolution of marriage? Well, what about the prong? What about the prong of due diligence that justice Moore asked about? All right. And I would simply refer you to the Johnson court's statement about diligence. What the Johnson court, and frankly, the ours, mine court said is the diligence requirement is not inflexible. What they say is that in this situation, when the agreement is in and of itself on its face, substantively unconscionable, it's not going to stand because of diligence diligence is not going to preclude setting it aside in this case. And I think the thing that we need to look at is the similarity of this case, certainly to ours, mine, but also to Callahan and Johnson at the point. In this case where the case was presented to the trial court, the trial court was never advised of what was in the marital estate, what the value of the marital estate was. That's the same thing as with ours, mine. The trial court was never advised of anything other than what the wife would be getting. The trial court had no circumstance under which it could have ever passed on the unconscionability of the agreement as presented because the marital settlement agreement, the documentation submitted to the trial court, the testimony committed, submitted to the trial court didn't advise the trial court of the relative distribution of the property. It's the same thing as in ours, mine. The point of the matter is the circumstances of this case are such that in a situation where the record demonstrates that Kim had an earning capacity of about $10 an hour compared to what the 10 and 11 tax returns show that he had, which was about a million dollars a year under circumstances where Kim gets far less than 20% of the marital estate and no income producing assets at all. There simply is no circumstance where you can reasonably assert that that division is anything other than substantively unconscionable. And all you have to do to confirm that is look at the facts of the ours, mine case, look at the facts of the Callahan case, look at the facts of the Johnson case. And what is significant in this situation is neither in the argument in the trial court, nor in the brief, nor in his argument today, as council ever addressed any of those three cases, which are factually on point here, the point that we get to is regardless of diligence, the law is as decided by the Johnson court and is referenced in the, in the ours, mine case, unconscionable agreements cannot be allowed to stand. There is no genuine issue of fact in this case that the finding of unconscionability is appropriate because there is no genuine issue of fact that the value of the marital estate in this case far exceeded $11 million that the value of everything received by the respondent in this case was less than $2 million. And that respondent had no earning capacity beyond $10 an hour. And the substantive unconscionability is apparent from a review of the case law. And that's what judge Thurston found. Judge Thurston found this was so one sided and so unacceptable that it could not stand regardless of diligence. That is exactly what the Johnson court said. That's exactly what the ours mine court said. And it is of some significance that at no point in this case has the appellant ever argued otherwise. The point of the matter is diligence as the Johnson court said is not inflexible and he cannot rely upon that to have this court to enforce what is on its face a substantively unconscionable agreement. And let's be clear. Mr. Harvey, can you tell me, do you agree that this 1401 proceeding is a separate proceeding so that if this court affirms what happens next under this court affirms the cases remanded to the trial court, the marital settlement agreement pursuant to the court's order is set aside. The cases remanded to try to the trial court to try the divorce case because there will never have been an equitable distribution of the marital estate because the marital settlement agreement, the effect of the court's order was to set aside the marital settlement agreement. This case will be tried for an, to determine what an equitable division of the marital estate would be. Okay. The court's order found that the agreement was unconscionable on its face under a 1401 petition, which is a separate proceeding. Do we agree on that? Well, the 1401 petition is a separate proceeding, Your Honor, to the extent that the procedure for attacking the underlying judgment is beyond the normal appeal or motion to reconsider or things that would happen within 30 days. Obviously there, there are things which have to be established in a 1401 petition. The point is in this case, the trial court found that those things existed. The trial court found that the agreement was substantively unconscionable. The trial court found that it was so substantively unconscionable that it would not be acceptable to the court that under the authority of the Johnson case, the trial court could appropriately, appropriately excuse the diligence requirement. So let me interrupt you one more time, if I could. Do you think that a person like your client can waive an interest in a marital estate, can want out of a marriage so badly that they waive an interest in the marital estate and then four days before the two year statute runs have what's what I would call buyer's remorse. That is, she now knows two years later, she separated in time from the whatever relationship there was. But do you think at the time she said, I know what I'm doing, I don't need a lawyer, all of those things. Do you think that counts for anything when the court is now looking at a 1401 as far as a genuine issue of fact, the Johnson court said it did not because in the Johnson court, the party who filed the 1401 petition appeared in court. He agreed to the proceeding. He said that he understood it and all of that. Yet at the, at the end when he filed his 1401 petition, the same issues were presented there. And, and contrary to what counsel says, if you look at Callahan, Arzmon and Johnson, they're all marital settlement agreements, which were set aside on 1401 petitions. And the Johnson court is, is directly in point because Mr. Johnson clearly appeared in court without representation, acknowledged all of the things that he says that Kim acknowledged here. And at the end of the day, the court said it doesn't make any difference because this agreement is so one-sided, so unconscionable, it cannot stand. Okay. All right. Thank you very much, Mr. Harvey, Mr. Kiyonko. Thank you. Senator, my general response is that Mr. Harvey says that we never argued otherwise that these facts are undisputed. And I don't know how to answer that except to refer to our brief and my previous argument in which we have discussed the many, many facts, which are undisputed. Let me just address in my brief time, a couple of items. He says, we never discussed the Johnson case. Well, as a matter of fact, in our reply brief at page 13, we do in fact discuss the Johnson case. And we say in the Johnson case, the appellate court stated that the trial court's disillusioned judgment was  in the absence of evidence. In addition, this was after a trial. We think more pertinent than the Johnson case, your honor, is the case we cited, I believe in both briefs, in remarriage of Onishi Chong and Chong. And we invite the court's attention to that case. Here again, counsel suggests that the fact is undisputed that she got less than $1 billion. It's undisputed that she got 17% of the estate. Well, as we showed in our brief, there were items that she received, which were not valued at all, such as being released from any present or future debt, credit card debt, health insurance, other assets. And then just to respond to his argument that there was no dispute. If you look at the spreadsheet I referred to, which is at page C 1489 of the record, contrary to his argument at the bottom of column E, it says the percentage to the wife was 19%. So there's a conflict right there. In one place, it's 17%. In another place, it's 19%. In addition there, it says that she got a total of $1.984 million. And that's not counting the other assets that are not listed. So it's certainly a fair inference. And if there's an inference, the summary judgment is not proper. There's a fair inference from the record that she did receive something more than $2 million. How much we won't know until there's a trial in this case. The appellate relies on the testimony of Greg and his deposition, which he says he admitted that the value of the, the dealerships was a certain amount, but he was relying, he had no personal knowledge of that. He's not an accountant. And therefore that testimony should count very little. The conflict among others arises from the affidavit of Chris Scroggins. And this is in the appendix at page 68 where he says in paragraph four, the total for all dealerships, that is the total fair market value for the stock in all these dealerships for 2011 would be $2,278,234. There's a direct conflict between the valuation of one expert, which was a little over 4 million and the affidavit of Scroggins. In addition, the financial statements that the petitioner relies on so heavily here, as we discussed several times in our briefs, the accountant said those financial statements should not be relied on CS1 and CS2 should not be relied on for any purposes other than income tax. And they do not represent market value figures. So again, here's another conflict in the evidence. So there again, there are multiple conflicts and inconsistencies in the record. And any one of those is sufficient to require setting aside the summary judgment and remanding the case. Okay. Mr. Kiyaka. Thank you. And Mr. Mr. Harvey, thank you very much. This matter will be taken under advisement. I would like to reflect that we were never served a copy of a reply brief. Okay. Your Honor, if I may comment that I, uh, gentlemen, we can't get into that. That's all right.